## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## AT LEXINGTON

### *ELECTRONICALLY FILED*

| | | |
|---|---|---|
| **CLUBSPECIALISTS INTL., LLC** | ) | |
| | ) | |
| | ) | **Case No. _____** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **COMPLAINT** |
| **KEENELAND ASSOCIATION, INC.** | ) | |
| | ) | |
| **SERVE**: | ) | |
| | ) | |
| SKO-LEXINGTON SERVICES, LLC | ) | |
| 300 West Vine Street, Suite 2100 | ) | |
| Lexington, Kentucky 40507 | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

Plaintiff, ClubSpecialists Intl., LLC ("CSI"), by counsel and for its Complaint against Defendant, Keeneland Association, Inc. ("Keeneland"), states as follows:

### PARTIES

1. CSI is a Florida limited liability company with its principal place of business at 3607 Donegal Drive, Tallahassee, Florida 32309. All of the members of CSI are residents of Florida.

2. Keeneland is a corporation incorporated under the laws of Kentucky, with its principal place of business at P.O. Box 1690, Lexington, Kentucky 40588. Keeneland's registered agent is SKO-Lexington Services, LLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky 40507.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      This Court has personal jurisdiction over Keeneland both because Keeneland is a Kentucky corporation located within and doing business in the Eastern District of Kentucky and because Keeneland expressly consented to the jurisdiction of this Court in the Phase 2 Agreement ("Agreement") on which CSI's claims are based. A true and correct copy of the Agreement is attached as Exhibit A, and the forum selection clause is located in the paragraph titled "Governing Law."

5.      Venue is proper in this Court because CSI and Keeneland specifically agreed to venue in this District in the Agreement. *See* Agreement, Exhibit A, Governing Law.

## FACTS

6.      In 2014, Keeneland began evaluating the possibility of transitioning its food and beverage services and merchandising services from Turf Catering, the company it was using for such services, to Keeneland's own personnel.

7.      CSI is in the business of providing management consulting services to companies, focusing primarily on clubs, resorts, and sports and entertainment businesses. Keeneland contacted CSI to discuss the possibility of retaining it to assist with the transition of its food and beverage services and merchandising services.

8.      On December 5, 2014, CSI and Keeneland entered into the Agreement, which provides a contract term of 36 months beginning on December 1, 2014, and ending on November 30, 2017 ("Term").

9.      Through the Agreement, CSI agreed to provide services as Keeneland's

Transition Consultant, and Keeneland agreed to pay CSI a fee based on a percentage of its food and beverage revenue and merchandising revenue generated during the term of the Agreement.

10.    The scope of CSI's work under the Agreement was more specifically outlined in the Transition Plan Timeline, as well as in 11 Key Transition Initiatives.

11.    Keeneland agreed to pay CSI 3.0% of the Food and Beverage/Merchandise Annual Gross Revenue in 2015 and 2016, and 2.5% of the Food and Beverage/Merchandise Annual Gross Revenue in 2017.

12.    These annual fees were to be paid in twelve equal payments on the first day of each month during the Term of the Agreement based on the prior year's gross revenue.  Twice a year, in May and November, the fees were to be reconciled with the current year's actual gross revenue.

13.    The Agreement may only be terminated for cause.

14.    In order to terminate for cause, Keeneland was required to send a written notice to CSI specifying the behavior Keeneland believed either (a) constituted a breach of the Agreement or (b) was detrimental to Keeneland's reputation.

15.    At all times, CSI has provided valuable services in accordance with the Agreement.  Additionally, CSI provided other services to Keeneland that were not required under the Agreement in order to maintain what CSI believed was a positive relationship with its client.

16.    Prior to June 2016, Keeneland had always informed CSI that it was exceeding expectations.  At no time was Keeneland critical of the services CSI provided.

17.    On June 30, 2016, however, Keeneland sent CSI a letter purporting to terminate the Agreement for cause ("Keeneland Letter").

18.     Through the Keeneland Letter, Keeneland informed CSI that it would pay fees and expenses through July 31, 2016, but nothing after that date.

19.     On July 13, 2016, CSI responded with a letter explaining that the Keeneland had no cause to terminate the Agreement and that the criticisms contained in the Keeneland Letter related to issues outside the scope of CSI's obligations under the Agreement ("CSI Response Letter"). Additionally, CSI noted that Keeneland had not provided the requisite 30-day cure period under the Agreement.

20.     CSI demanded Keeneland's continued compliance with its payment obligations under the Agreement.

21.     Keeneland has failed and refused to pay the monthly payments due under the Agreement and has made clear that it does not intend to perform under the Agreement.

## COUNT I:
## BREACH OF CONTRACT

22.     The foregoing allegations are incorporated by reference herein with the same force and effect as if set forth fully below.

23.     The Agreement is a binding contract between Keeneland and CSI.

24.     Keeneland is obligated to make payments to CSI in accordance with the Agreement.

25.     Keeneland has breached the Agreement failing to pay the amount owed under the Agreement and by making clear that it has no intention of performing under the Agreement.

26.     CSI has been damaged by Keeneland's breach of the Agreement.

27.     As a result of Keeneland's breach, CSI is entitled to a judgment against Keeneland for all amounts due under the Agreement.

## COUNT II:
## BREACH OF GOOD FAITH AND FAIR DEALING

28.     The foregoing allegations are incorporated by reference herein with the same force and effect as if set forth fully below.

29.     The Agreement imposes upon Keeneland the duty of good faith and fair dealing.

30.     Keeneland's effort to terminate the Agreement without having good cause to do so constitutes a breach of its duty of good faith and fair dealing.

31.     CSI has been damaged as a result of Keeneland's breach.

32.     As a result of Keeneland's breach, CSI is entitled to a judgment against Keeneland for all amounts due under the Agreement.

WHEREFORE, CSI demands the following relief:

1.     Judgment against Keeneland;

2.     Its attorney's fees and costs; and

3.     Any and all other relief to which it may be entitled.

Respectfully submitted,


  /s/   Brian M. Johnson
Brian M. Johnson
Emma R. Wolfe
Dickinson Wright PLLC
300 W. Vine Street, Ste. 1700
Lexington, Kentucky 40507
Tel:    (859) 899-8700
Fax:    (859) 899-8759
Email:  bjohnson@dickinsonwright.com
        ewolfe@dickinsonwright.com

COUNSEL FOR PLAINTIFF

LEXINGTON 72213-1 40086v4