UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **CLUBSPECIALISTS INTL. LLC,** <br>    Plaintiff, <br><br> V. <br><br> **KEENELAND ASSOCIATION, INC.,** <br>    Defendant, <br><br> and <br><br> **KEENELAND HOSPITALITY, LLC,** <br>    Intervening Defendant/ <br>    Counterclaim Plaintiff. | **CIVIL NO. 5:16-CV-345-KKC** <br><br> **<u>MEMORANDUM OPINION & ORDER</u>** |

\*\*\* \*\*\* \*\*\*

This is a breach of contract case. Keeneland Association, Inc. terminated its service contract with ClubSpecialists Intl., LLC ("CSI"). CSI claims that Keeneland breached the parties' service agreement and that Keeneland breached its implied duty of good faith and fair dealing by terminating the parties' agreement without articulating a material breach and by failing to provide CSI with the requisite opportunity to cure any alleged breach.  Keeneland moves for judgment on the pleadings (DE 22), contending that how it terminated the contract fell squarely within its rights under the agreement. Because CSI states plausible claims for breach of contract and for breach of good faith and fair dealing, Keeneland's motion for judgment on the pleadings is **DENIED**.

1

# I. BACKGROUND

A. **Standard of Review**

The parties disagree over the standard of review that should be applied in deciding this Keeneland's motion.

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Sixth Circuit imposes the same pleading requirements on a party who files a Rule 12(c) motion for judgment on the pleadings as it does on a party who files a motion to dismiss pursuant to Rule 12(b)(6). *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Under Rule 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead such facts so as to allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570); s*ee also City of Ann Arbor*, 675 F.3d at 611 ("[T]he court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle relief."); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

In that review, the Court looks at all the pleadings filed in the case. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *Rondigo LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104

(6th Cir. 2010). When resolving a motion to dismiss, then, a district court is limited to matters formally contained in the pleadings. However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *see also Rondigo, L.L.C.*, 641 F.3d at 681 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (A court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.").

In its response to Keeneland's motion for judgment on the pleadings, CSI presents three exhibits not attached to its complaint for "the purpose of providing the Court with context for the issues raised" in Keeneland's motion and its own pleadings. (DE 30, at 6). CSI argues that, in considering these exhibits, this Court should employ a different standard and convert Keeneland's motion to one for summary judgment.

Once "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d). Because of the risk of prejudicial surprise arising from the Court's treating a motion to dismiss as a motion for summary judgment, Rule 12(d) further requires notice and an opportunity to supplement the record before the Court enters summary judgment. *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir.1995). "Failure to provide the parties with either constitutes reversible error." *Harrington v. Painter*, 92 F. App'x 126, 129 (6th Cir. 2003) (citing *Armengau*, 7 F. App'x at 343–44).

The parties have not yet conducted any discovery. Indeed, the Court held a hearing on the issue of discovery and advised the parties that the protective order staying all discovery in this matter (DE 23) would remain in effect until the Court decided Keeneland's motion. The purpose of that order was to limit—to the pleadings—what the Court would consider when deciding the present motion. To convert this motion to one for summary judgment would contravene this intention. Therefore, the Court will exclude the exhibits while considering the parties' arguments and will address the issues under the Rule 12(c) standard.

B.  **Facts**

In its Complaint, CSI asserts that in 2014, Keeneland sought to purchase the assets of Turf Catering Company, a food and beverage service provider, in order to form the of business of what would become Keeneland Hospitality. (Compl. ¶ 6). Keeneland hired CSI, a consulting service focusing on "clubs, resorts, and sports and entertainment businesses," for help in the transition. (Compl. ¶ 7–8). On December 5, 2014, CSI and Keeneland entered into a contract, the Phase 2 Agreement, for a term of thirty-six months in which CSI agreed to act as Keeneland's transition consultant in exchange for Keeneland paying CSI a fee based on a percentage of its food, beverage, and merchandising revenue. (Compl. ¶ 8–9). Specifically, "Keeneland agreed to pay CSI 3.0% of the Food and Beverage/Merchandise Annual Gross Revenue in 2015 and 2016, and 2.5% of the Food and Beverage/Merchandise Annual Gross Revenue in 2017." (Compl. ¶ 11).

The Phase 2 Agreement provided a way for the parties to end their relationship. The section "Termination for Cause" provided:

> Keeneland shall have the right to terminate this Agreement for cause. For purposes of this Agreement, Keeneland shall have "cause" to terminate this agreement upon written notice for of any of the following:
>
> (i) A determination by Keeneland that CSI (A) has breached any material term or condition of this Agreement; and/or (B) is engaging or has engaged in willful misconduct or conduct which reasonably is perceived by Keeneland to be

> detrimental to the business or reputation of Keeneland Association. In the event that Keeneland should elect to terminate this Agreement for cause within the meaning of this paragraph, Keeneland shall deliver to CSI written notice specifying the nature of such cause, and providing CSI with an opportunity to cure such breach or behavior, to Keeneland's satisfaction, within 30 days of the written notice. If this Agreement is terminated pursuant to this section (i), Keeneland shall pay outstanding fees and expenses owed hereunder to CSI through the date of written notice.

(Compl. Ex. A).

Prior to June 2016, CSI and Keeneland had an amicable working relationship. Keeneland had always informed CSI that its work was "exceeding expectations." (Compl. ¶ 16–17). But then the relationship soured.

On June 30, 2016, Keeneland sent CSI a letter terminating the relationship. (DE 22-3). The letter included a list of missed objectives that amount to, in Keeneland's view, a "breach of material terms of [the parties'] agreement." (DE 22-3). Keeneland offered to pay any fees and expenses through July 31, 2016.  Keeneland's letter made no mention of providing an opportunity for cure.

On July 13, 2016, CSI responded to Keeneland in a letter, explaining that Keeneland had no cause to terminate the Phase 2 Agreement and that the purported reasons for Keeneland's decision to terminate the agreement were outside of the scope of CSI's obligations under the agreement. (Compl. ¶ 19). CSI also informed Keeneland that it had not provided the requisite thirty-day cure period. (Compl. ¶ 19).

After several discussions between the parties, Keeneland wrote back on September 2, 2016, this time providing a more thorough explanation for why it terminated the parties' relationship. (DE 22-4, at 1). In addition, Keeneland granted CSI "an additional thirty days to propose a cure 'to Keeneland's satisfaction,' per the Agreement. Any such proposal must address

5

both the issues and losses identified [by Keeneland] from the past as well as future performance." (DE 22-4, at 4).

Dissatisfied with Keeneland's actions, CSI filed suit in this Court. Keeneland has now moved for judgment on the pleadings.

## II. DISCUSSION

CSI alleges that Keeneland has failed and refused to pay the monthly amounts CSI is due under the Phase 2 Agreement. CSI seeks to recover monetary damages from Keeneland under two causes of action sounding in contract: (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 22–27, 28–32).

### A. **Breach of Contract**

The parties dispute whether, as alleged, Keeneland's early termination of the contract constituted a breach of the Phase 2 Agreement.

Keeneland asserts that the termination clause allowed it to do exactly what it did: determine whether CSI breached the contract—which it did in the June 30 letter—and, once it made the determination, provide CSI thirty days *to offer a cure* for the breach—which it did two times—and, then make the sole determination whether or not the proposed cure was satisfactory.

CSI responds that Keeneland "never actually, in good faith, made [] a determination at all" that CSI materially breached the contract. (DE 30, at 8). CSI also argues that Keeneland breached the contract when it failed to provide CSI with thirty days to offer a cure before it cancelled the contract on June 30. (DE 30, at 13).

At this stage, CSI has pled sufficient facts to state a claim that Keeneland breached the Phase 2 Agreement by failing to provide notice and an opportunity to cure the alleged breaches before it terminated the contract.

6

Contract interpretation is generally a matter of law. *See Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008). To interpret a contract, a court must look solely at the four corners of the agreement. *Smith v. Crimson Ridge Dev., LLC*, 410 S.W.3d 619, 621 (Ky. Ct. App. 2013). "Unambiguous terms contained within the contract are interpreted in accordance with their ordinary meaning, 'without resort to extrinsic evidence.'" *Id.* (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)).

The Phase 2 Agreement vests Keeneland with the sole authority to determine whether CSI breached a material term of the contract. Before it can terminate the agreement, however, the contract requires Keeneland to notify CSI of contractual deficiencies and to provide CSI the opportunity to cure any alleged breach. (Compl. Ex. A). Failure to do so would constitute a breach of contract by Keeneland. *Chrysler v. Realty Co., LLC v. Design Forum Architects, Inc.*, 341 F. App'x 93, 96 (6th Cir. 2009).

As pled, CSI alleges sufficient facts to support a plausible claim that Keeneland did not provide CSI with the opportunity to cure alleged breaches. CSI alleges that by the time Keeneland notified CSI of any problems, all of the material breaches articulated in the notice letter were impossible to cure. (DE 22-4; DE 30, at 16). Accepting the facts in the Complaint as true, CSI's alleged breaches had occurred long before Keeneland sent the June 30 termination letter, thus depriving CSI of any meaningful opportunity to cure the deficiencies cited by Keeneland. The Phase 2 Agreement requires that notice must be given in a timely manner that reasonably provides a party with an opportunity to cure an alleged breach, even if proposed cures are ultimately determined to be unsatisfactory by Keeneland. To read the contract otherwise would render the opportunity to cure clause illusory and eliminate it from the contract. *See City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986) (a court should give effect "to all parts and every word

in [a contract] if possible"). At this stage, then, CSI has plausibly alleged a breach of contract claim.

    B. **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Every contract contains an implied covenant of good faith and fair dealing. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Such a covenant imposes on parties a duty to do everything necessary to carry out the contract. *Id.*; *see also RAM Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003); *Ligon v. Parr*, 471 S.W.2d 1, 3 (Ky. 1971) (noting that the covenant of good faith and fair dealing prevents one party from "impairing the right of another party to receive the fruits of the contract") (internal quotation marks omitted). A party can violate the implied covenant of good faith and fair dealing even without breaching any specific provisions of a contract. *See Hackney v. Lincoln Nat'l Fire Co.*, 657 F. App'x 563, 577 (6th Cir. 2016) (citing *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457–58 (6th Cir. 2005) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2004)); *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 776 (6th Cir. 2009) (citing *Farmers Bank & Trust Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005); *Ligon*, 471 S.W.2d at 2–3).

Keeneland argues that the Phase 2 Agreement explicitly vests it with the sole authority to determine whether the contract was materially breached and that in terminating the contract, it acted within those rights, which is not precluded by the implied covenant of good faith. *See, e.g.*, *Farmers Bank & Trust Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights."); s*ee also Hunt Enters. v. John Deere Indus. Equip. Co.*, 18 F. Supp. 2d 697, 700 (W.D. Ky. 1997) (noting that the covenant of good faith and fair dealing, "does not preclude a party from enforcing the terms of the contract . . . . It is not 'inequitable' or a breach

of good faith and fair dealing in a commercial setting for one party to act according to the express terms of a contract for which it bargained"); *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) ("[A] party's acting according to the express terms of a contract cannot be considered a breach of the duties of good faith and fair dealing.").

At this stage of the litigation, the Court is not persuaded by Keeneland's argument because it does not dispose of the issue. In considering whether a party acted in good faith, the issue is not whether Keeneland exercised its rights under the Phase 2 Agreement, but *how* Keeneland exercised its right to terminate the agreement. The latter requires consideration of an obligation outside of the express terms of the contract.

In this case, Keeneland has the contractual discretion to determine if CSI breached a material term or condition of the contract. However, that discretion to terminate the contract is not unbridled, but is circumscribed by the implied covenant of good faith and fair dealing. *See Time Warner Cable Midwest LLC v. Pennyrile Rural Electric Cooperative Corp.*, No. 5:15-CV-TBR, 2015 WL 4464105, at *4 (W.D. Ky. July 21, 2015) (considering a breach of implied covenant of good faith and fair dealing under Kentucky law and finding that "[t]he implied covenant of good faith and fair dealing required a party vested with contractual discretion to 'exercise that discretion reasonably and with proper motive, and [not] arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties'") (citing *Deom v. Walgreen Co.*, 591 F. App'x 313 (6th Cir. 2014) (unpublished) (applying Illinois law)) (collecting cases); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.*, LLC, No. 5:11-CV-374-DCR, 2014 WL 2113096, at *8 (E.D. Ky. May 20, 2014) (addressing the proposition, but finding no evidence that the defendant "acted in bad faith, or in an arbitrary, capricious, or unreasonable manner"); *See generally Ranier*, 812 S.W.2d at 156.

Applying that principle here, CSI has offered facts to support its claim of a breach of the implied covenant of good faith and fair dealing. In its Complaint, CSI asserts that before the June 30 letter, the parties had an excellent working relationship, that Keeneland had never complained about any aspect of CSI's performance under the Phase 2 Agreement, and that the cited basis for termination predated the June 30 letter. The complaint also alleges that the reasons offered by Keeneland in terminating the Phase 2 Agreement outside of the scope of CSI's contractual obligations.

These allegations present a plausible claim for relief – that Keeneland's claim of breach was merely pretext to avoid paying CSI the remainder of the amount it was owed under the agreement.

### III. CONCLUSION

Because CSI plausibly states claims for breach of contract and for breach of good faith and fair dealing, Keeneland's motion for judgment on the pleadings is denied.

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendant Keeneland Association, Inc.'s motion for judgment on the pleadings is **DENIED**.

(2) the Protective Order (DE 23) previously granted by this Court is **VACATED** and parties **SHALL** proceed with formulating a discovery plan.

(3) a telephone scheduling conference **SHALL** be conducted **March 2, 2017 at 11:00 a.m.** The parties are to call 888-684-8852 using access code 6823688. Please dial in a few minutes before the conference is scheduled to begin.

Dated February 8, 2017.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY