# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| CLUBSPECIALISTS INTL., LLC, <br>     Plaintiff, <br><br> v. <br><br> KEENELAND ASSOCIATION, INC., <br>     Defendant, <br><br> and <br><br> KEENELAND HOSPITALITY, LLC, <br>     Intervenor Defendant. | CIVIL NO. 5:16–CV–345–KKC <br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff ClubSpecialists Intl., LLC and Defendant and Intervenor Defendant Keeneland Association, Inc. and Keeneland Hospitality, LLC, respectively. For the reasons set forth below, the Court denies ClubSpecialists motion for summary judgment and grants in part and denies in part Keeneland's motion for summary judgment.

## I. Background

The following is an account of the undisputed facts in this case. This dispute arises from the Phase 2 Agreement entered into by ClubSpecialists and Keeneland Association in December 2014. Under that agreement, ClubSpecialists was to oversee eleven key transition initiatives relating to the changeover of Keeneland's food and beverage business from a third-party provider to an in-house operation. The agreement was for a three year period and ClubSpecialists was to be paid, on a monthly basis, a varying percentage of annual gross

1

revenues from Keeneland's food, beverage, and merchandise sales. After the agreement was executed, Keeneland Association organized a separate subsidiary company, Keeneland Hospitality, to operate the food, beverage, and merchandise business.

The Phase 2 Agreement provided that Keeneland could terminate the agreement for cause through two procedures. With thirty-days written notice, and an opportunity to cure, Keeneland could terminate the agreement based on "[a] determination by Keeneland that ClubSpecialists (A) has breached any material term or condition of this Agreement; and/or (B) is engaging or has engaged in willful misconduct or conduct which reasonably is perceived by Keeneland to be detrimental to the business or reputation of Keeneland Association." Alternatively, Keeneland could terminate the agreement immediately "for any act of fraud, embezzlement, theft, or personal dishonesty by ClubSpecialists." (DE 1-1, at 6.)

On June 30, 2016, Keeneland informed ClubSpecialists that it was terminating their relationship based on "eighteen (18) months of missed goals, objectives, and initiatives . . . which constitute a breach of material terms of our agreement." (DE 83-5, at 2.) Keeneland further stated that it intended to pay ClubSpecialists under the agreement for an additional thirty days. ClubSpecialists responded to the termination letter, informing Keeneland that it had failed to specify any act which constituted cause for termination and demanding that Keeneland provide such information and thirty days for ClubSpecialists to cure the alleged breach. As a result, counsel for Keeneland sent ClubSpecialists a letter on September 2, 2016 which purported to give ClubSpecialists thirty days to offer a cure.

Instead of offering a cure, ClubSpecialists initiated this lawsuit, alleging breach of contract and breach of the duty of good faith and fair dealing. (DE 1.) Keeneland Hospitality moved to intervene in this action and filed a counterclaim against ClubSpecialists alleging breach of contract, based on the allegations contained in the termination letter. (DE 15.) Keeneland Association moved for judgment on the pleadings, contending that its termination

fell within its rights under the agreement. The Court, however, found ClubSpecialists had stated plausible claims and denied Keeneland's motion. (DE 32).

During the course of discovery, Keeneland learned that ClubSpecialists had made two payments to Keeneland Hospitality's Director of Hospitality, Bryan O'Shields. ClubSpecialists had recommended that Keeneland Hospitality create the position and had assisted Keeneland in the search that ultimately resulted in O'Shields hiring. Kevin Stark, a ClubSpecialists principal, made the first payment to O'Shields in December 2015, a check for $10,000. That payment was understood by both O'Shields and Stark to be in appreciation of O'Shields's work at Keeneland Hospitality. In May 2016, ClubSpecialists made a second payment to O'Shields. This payment was prompted by O'Shields, who had asked for a loan to cover funeral expenses for a family member who had died unexpectedly. Stark and Jim Riscigno, another ClubSpecialists principal, discussed the payment via email, proposing that O'Shields could pay them back over a year or, if they decided to again pay O'Shields a yearly bonus, they could subtract the loan from that amount. Ultimately, O'Shields was never asked to repay the loan and ClubSpecialists declared the payment as a "business expense" on its taxes. O'Shields was never a ClubSpecialists employee, and ClubSpecialists did not inform Keeneland Hospitality of this payments until discovery in this matter commenced. O'Shields resigned as Director of Hospitality in July 2016.

ClubSpecialists and Keeneland Hospitality have filed amended complaints and counterclaims. ClubSpecialists added a third count seeking indemnification from Keeneland Association for Keeneland Hospitality's counterclaims. (DE 49). In addition to its original breach of contract claim, Keeneland Hospitality has alleged a second breach of contract claim against ClubSpecialists, and a breach of the duty of good faith and fair dealing, based on the secret payments to O'Shields. Keeneland Hospitality also asserts claims for tortious interference with its business relationship, aiding and abetting breach of fiduciary duty, and

fraudulent omission. (DE 78.) The parties have filed cross-motions for summary judgment. Briefing on these motions has been completed and this matter is now ripe for review.

## II. Standard of Review

A moving party is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to defeat a summary judgment motion, "[t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Thus, the "mere existence of *some* alleged factual dispute between the parties" will not defeat summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 at 247–48. Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted)).

## III. Analysis

*A. ClubSpecialists's breach of contract and breach of good faith and fair dealing claims*

As the Court found in its prior opinion, the Phase 2 Agreement required that Keeneland provide ClubSpecialists written notice of contractual deficiencies and a thirty-day period to cure those alleged breach. (DE 32, at 7.) ClubSpecialists claims that Keeneland breached the agreement by failing to provide the required notice and opportunity to cure. Keeneland argues that it is entitled to summary judgment under the first breach rule based on ClubSpecialists secret payments to O'Shields.

*1. The first breach rule*

When sitting in diversity, federal courts must apply the law of the state. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). It is well established under Kentucky law that "a party who commits the first breach of a contract is deprived of the right to complaint of a subsequent breach by the other party." *Williamson v. Ingram*, 49 S.W.2d 1005, 1006 (Ky. 1932); *see also Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956) ("[H]e who first breaches a contract must bear the liability for its nonperformance. Thus no benefits should be obtained by the party who is guilty of the first breach."); *see also Amalgamated Indus. v. Tressa, Inc.*, 69 F. App'x 255 (6th Cir. 2003). This rule originated as one of equity, but applies even at law. *West Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 315 (Ky. 1959) (citing *Williamson v. Ingram*, 243 Ky. 749 (1932)). For the first breach rule to apply, the breach must be "material or substantial." *Pinson Drilling, Inc. v. Williams*, No. 2013–CA–001599–MR, 2014 WL 4177424, at *2 (Ky. Ct. App. Aug. 22, 2014) (citing *Dalton*, 293 S.W.2d 470 and *Fay E. Sams Money Purchase Pension v. Jansen*, 3 S.W.3d 753 (Ky. Ct. App. 1999)).

ClubSpecialists claims that Kentucky's first breach rule is inapplicable to this case. It argues that the rule applies only where there is a direct connection between the first breach and the other party's later breach. Under that interpretation of the rule, it cannot be invoked where the later-breaching party lacked knowledge of the first breach. Generally, in cases where Kentucky higher courts have applied the rule, there has been a direct connection between the first breach and the subsequent breach. *See Hall v. Rowe*, 439 S.W.3d 182 (Ky. App. 2014) (coal lessor claimed lessee breached by failing to provide payments and documentation); *Webb v. Welcome Wagon, Inc.*, 255 S.W.2d 459 (Ky. 1953) (company that breached contract could not enforce noncompetition agreement against employee); *see also Amalgamated Indus.*, 69 F. App'x at 259–60 (discussing the first breach rule where the first material breach led to the subsequent breach). No court,

5

however, has held that the rule is limited to those cases. Thus, it is an issue of first impression whether the first breach rule applies in Kentucky where the party invoking the rule was ignorant of the first breach. Accordingly, in the absence of explicit authority, the Court is "guided by applicable principles of state law and by relevant decisions of other jurisdictions." *Arms v. State Farm Fire & Cas. Co.*, 731 F.3d 1245, 1249 (6th Cir. 1984) (citing *Winston Corp. v. Cont'l Cas. Co.*, 508 F.2d 1298, 1304 (6th Cir.)).

Looking first to the applicable principles of state law, the Court notes that Kentucky's first breach rule does not explicitly limit its applicability to instances where the invoking party knew of the first breach. On its face, the rule contains no causal requirement. It simply states that "no benefits should be obtained by the party who is guilty of the first breach." *Dalton*, 293 S.W.2d at 476. Additionally, the Kentucky Court of Appeals has held that a party's "motivation is not relevant unless they were the first to breach the contract." *Fay E. Sams*, 3 S.W.3d at 759. In that case, the court assumed that the defendants breached the contract by giving prextual reasons for termination, but still found that the defendants could not be held liable based on the plaintiffs earlier breach. *Id.* This suggests that first breach rule in Kentucky operates as a form of the "clean hands" doctrine, barring all claims brought by the first breaching party regardless of causal connection or knowledge. In such cases, the Kentucky Supreme Court has stated that "[p]ublic policy dictates that a wrongdoer should not be allowed to profit from his or her own wrongdoing." *McMullin v. McMullin*, 338 S.W.3d 315, 323 (Ky. 2011).

Next, looking to statements of the law and decisions rendered in other jurisdictions, the weight of authority suggest that ignorance is immaterial to application of the first breach rule. The Restatement (Second) of Contract is particularly instructive. Section 237 provides: "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an

exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237 (1981). The commentary provides that ignorance is immaterial to the application of this rule. *Id.* at cmt. c. ("It follows that one party's material failure of performance has the effect of the non-occurrence of a condition of the other party's remaining duties, under the rule stated in this Section, even though that other party does not know of the failure. If the other party is discharged as the result of an unjustified material failure of which he is ignorant, he has a claim for damages for total breach.") (internal citations omitted).

In cases involving government contracts, federal courts routinely apply the first breach rule, despite the lack of a causal connection between the breaches, as a matter of federal common law. The Federal Circuit has described the doctrine of "[p]rior material breach" as a "federal common law defense asserted when a party breaches a contract after another party has already breached the same contract." *Laguna Constr. Co., Inc. v. Carter*, 828 F.3d 1364, 1369 (Fed. Cir. 2016) (citing *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1334 (Fed. Cir. 2004)). The prior material breach rule is derived, in part, from general contract principles, suggesting that these cases are instructive. *See Christopher Village*, 360 F.3d at 1334 (citing E. Allen Farnsworth, *Farnsworth on Contracts* § 8.15, at 439 (1990); Restatement (Second) of Contracts § 237b, cmt. b (1981)). Federal and state courts have also applied the first breach rule despite ignorance by the later breaching party in numerous other contexts. *See Coll. Point Boat Corp. v. United States*, 267 U.S. 12, 15 (1925) ("A party to a contract who is sued for its breach may ordinarily defend on the ground that there existed, at the time, a legal excuse for non-performance by him although he was ignorant of that fact at the time of the breach."); *W. Auto Supply Co. v. Sullivan*, 210 F.2d 36, 39-40 (8th Cir. 1954) ("[I]t seems to be generally accepted by well-considered decisions that a party

to a contract may defend on the ground that there existed at the time a legal excuse for non-performance by him although he was ignorant of that fact at the time of the breach."); *Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*, No. 2:06cv305, 2007 WL 2344990, at *7 (E.D. Va. Aug. 15, 2007) ("[I]t is a well-established precept of contract law that ignorance of a material breach does not preclude a party from thereafter relying on such breach as justification for its failure to perform."); *Geo. Byers Sons, Inc. v. East Eur. Import Exp., Inc.,* 488 F.Supp. 574, 587 (D. Md. 1980) ("That the [plaintiff] may have been ignorant of the material breaches until some later date does not alter the conclusion that plaintiff is not liable on [defendant's] counterclaim for breach of contract."); *Preferred Inv. Servs. v. T&H Bail Bonds, Inc.*, C.A. No. 5886VCP, 2013 WL 3934992, at *22 (Del. Ch. Ct. July 24, 2013) ("[I]t is immaterial whether [defendant] knew at the time it purported to terminate the Agreement . . . that [plaintiff] already was in material breach of the Agreement."); *see also Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 933 F. Supp. 2d 974, 1006 n.31 (S.D. Ohio 2013) (noting that "there is at least some authority suggesting that a party may rely on a legal excuse for nonperformance, even if the party was unaware of the excuse at the time of nonperformance" but not addressing the issue) (citing *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Comm'rs,* 786 N.E.2d 921 (Ohio Ct. App. 2003)).

In support of its argument that knowledge and causation are elements of the first breach rule, ClubSpecialists primarily relies on the decision by then District Judge Amul Thapar in *Ackermann Enters., Inc. v. City of Bellevue*, No. 14–207–ART, 2016 WL 4499659 (E.D. Ky. Aug. 24, 2016). In a memorandum opinion denying summary judgment on the plaintiff's contract claims, Judge Thapar used a domino analogy to describe the rule: "The theory is that the breaches work like dominoes: Because the first material breach causes all the others, the others are excused." *Id.* at *10. The domino analogy provides some support to ClubSpecialists position, but does not

overcome the weight of authority which supports applying the first breach rule without a knowledge or causation requirement. Importantly, Judge Thapar did not hold that a subsequent breach *must* be caused by a prior breach for the rule to apply. His analogy is merely dicta, and he was not required to reach the issue of knowledge or ignorance because in *Ackermann*, the subsequent breach was directly caused by the first. *Id.* Accordingly, the Court finds, in this case, that Kentucky law deprives a party who commits the first breach of a contract of the right to complain of a subsequent breach by the other party, whether or not the other party knew of the first breach.[1]

   2. *ClubSpecialists's secret payments to O'Shields*

Having determined that Kentucky's first breach rule applies regardless of the other party's knowledge, the Court must now determine whether there is any genuine dispute as to a material fact as to whether ClubSpecialists payments to O'Shields were a material breach of the Phase 2 Agreement.

The Phase 2 Agreement provided that Keeneland had cause to terminate the agreement upon its own determination that ClubSpecialists "is engaging or has engaged in willful misconduct or conduct which reasonably is perceived by Keeneland to be detrimental to the business or reputation of Keeneland Association." It also provided for "immediate termination for any act of fraud, embezzlement, theft, or personal dishonesty" by ClubSpecialists. (DE 1-1, at 6.) Keeneland claims that ClubSpecialists engaged in willful misconduct, conduct detrimental to Keeneland's business or reputation, and personal dishonesty. The Court must therefore interpret the meaning of these terms.

---

[1] ClubSpecialists also asserts that Keeneland is incorrectly conflating the first breach rule with the after-acquired-evidence doctrine, which applies only to employment litigation. *See e.g.*, *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 806 (Ky. 2004). The Court does not rely on the after-acquired-evidence rule in determining that ignorance is immaterial to application of the first breach rule.

9

Black's Law Dictionary defines misconduct as "[a] dereliction of duty; unlawful, dishonest, or improper behavior." *Misconduct*, *Black's Law Dictionary*, (10th ed. 2014). In the employment context, willful misconduct means"[t]he deliberate disregard by an employee of the employer's interests, including its work rules and standards of conduct." *Willful misconduct of an employee*, *Black's Law Dictionary*, (10th ed. 2014). While Keeneland and ClubSpecialists were in a consulting relationship rather than an employment relationship, the Court finds this definition to be instructive. Both Stark and Riscigno testified that they received copies of the handbook and reviewed it. Therefore, violating Keeneland's policies and procedures, or assisting an employee in committing a violation, constituted "willful misconduct" under the Phase 2 Agreement.

Keeneland's handbook contained a number of provisions relevant to the payment made to O'Shields. First, §107 provided that "[e]mployees may not receive any income or material gain from any individual or entity other than Keeneland for materials produced or services rendered while working for Keeneland." (DE 84-16, at 3.) Keeneland's employee code of conduct required that, "[i]n each individual's business and personal life, he/she shall refrain from any behavior that *might* be viewed unfavorably by the public at large" and created the expectation that employees "act with the highest business ethics in all Keeneland relationships." (DE 84-16, at 4–5) (emphasis added). Keeneland's conflict of interest policy stated that "[e]mployees involved in the selection and/or purchase of . . . services from . . . consultants . . . should avoid situations that could interfere *or give any appearance of interfering* with their ability to make free and independent decisions regarding purchases on behalf of Keeneland." (DE 84-16, at 7) (emphasis added). It also required employees who "suspect a conflict of interest exists" to contact their immediate supervisor to resolve the matter. Similarly, Keeneland's anti-fraud policy required, "[a]ny fraud that is detected *or*

10

*suspected* must be reported immediately to the Director of Human Resources." (DE 84-16, at 6) (emphasis added).

It is undisputed that ClubSpecialists paid O'Shields a total of $16,000 without the knowledge of Keeneland while he was employed as Keeneland's Director of Hospitality. The Court must consider the facts in the light most favorable to ClubSpecialists and therefore assumes that the payments were made simply as gestures of thanks to O'Shields for his success at Keeneland, were not intended to influence his decision making, and did not directly lead to any ill effects. But even viewing the facts in this light, the payment violated Keeneland's personnel policies. Those policies explicitly prohibited O'Shields from accepting any outside income for his work at Keeneland. No reasonable jury could find that receiving a secret $16,000 payment from a consultant does not give "any appearance of interfering" with an employee's decision making. The payments were also likely to be detrimental to Keeneland's business or reputation, as evidenced by the fact that ClubSpecialists felt that they should be made in secret. Finally, ClubSpecialists concealment of the payments was also an act of personal dishonesty in light of Keeneland's policies prohibiting such payments and requiring potential conflicts of interests to be reported. Accordingly, ClubSpecialists breached the Phase 2 Agreement by engaging in willful misconduct, conduct detrimental to Keeneland's business and reputation, and personal dishonesty. Based on the size of the payments, that breach was material. Accordingly, the first breach rule bars ClubSpecialists's claims that Keeneland breached its contract and duties of good faith and fair dealing.

B. *Keeneland Hospitality's breach of contract claims*

In its second amended intervening counterclaim, Keeneland Hospitality asserts two breach of contract claims and one claim for breach of the duty of good faith and fair dealing against ClubSpecialists. Both Keeneland and ClubSpecialists have moved for summary judgment on these counterclaims. Under Kentucky law, the essential elements of a breach of

contract claim are "the existence of a valid contract, the failure to comply with the terms of the contract and damages resulting from the failure to comply." *Oliver v. J.J.B. Hilliard, W.L. Lyons, Inc.*, Nos. 2010–CA–001138–MR, 2010–CA–001236–MR, 2010–CA–001428–MR, 2010–CA–001479–MR, 2013 WL 762593, at *5 (Ky. Ct. App. Mar 1, 2013) (citing *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 903 n. 7 (Ky. 2008)). The parties agree that the Phase 2 Agreement was a valid contract.

1. *Third-party beneficiary status*

As an initial matter, Keeneland Hospitality is a third-party beneficiary of the Phase 2 Agreement. As a general rule, only the parties to a contract may sue to enforce its provisions. An exception exists for third-party beneficiaries, who may, "in his own right and name enforce the promise made for his benefit even though he is a stranger both to the contract and to the consideration." *Ping v. Beverly Enters., Inc.,* 376 S.W.3d 581, 595–96 (Ky. 2012) (quoting *Presnell Constr. Managers, Inc. v. EH Constr., LLC,* 134 S.W.3d 575, 579 (Ky. 2004)). To qualify as a third-party beneficiary, the promisee must have "intend[ed] to extract a promise benefitting the third-party." *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 309 (Ky. 1984). The promisees intent to create a third-party beneficiary "need not be expressed in the agreement itself; it may be evidenced by the terms of the agreement, the surrounding circumstances, or both." *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009) (citing *Sexton v. Taylor Cty.*, 692 S.W.2d 808 (Ky. Ct. App. 1985)). Keeneland Association intended the Phase 2 Agreement to benefit Keeneland Hospitality, and therefore it is a third-party beneficiary under the agreement. Accordingly, Keeneland Hospitality is also subject to the contractual limitations and defenses imposed upon Keeneland Association by the Phase 2 Agreement. *See United States v. Wood*, 877 F.2d 453, 458 (6th Cir. 1989) ("[I]t is well established that a promisor may 'assert against the beneficiary any defense which he

12

could assert against the promisee if the promisee were suing on the contract' . . . .") (quoting J. Calamari & J. Perillo, Contracts § 17–8 (2d ed. 1977)).

   2. *ClubSpecialists failure to successfully oversee the transition initiatives*

Keeneland Hospitality's first counterclaim asserts that ClubSpecialists breached the Phase 2 Agreement by failing to successfully oversee the implementation of the additional Micros POS terminals, development of the Keeneland Hospitality budget, and personnel recommendations.[2] Keeneland asserts that the Micros POS terminals stopped working in every race meet that took part while the Agreement was in place; the budget prepared by ClubSpecialists missed by nearly $1,500,000; ClubSpecialists's search for a Hospitality Director identified only one viable candidate, O'Shields, who quit after one year; and ClubSpecialists lacked a replacement when it recommended Keeneland Hospitality fire its executive chef. The parties agree that ClubSpecialists oversight responsibilities included these roles. They disagree, however, over the scope of ClubSpecialists's oversight responsibility and whether the alleged breaches were entirely the fault of ClubSpecialists. For instance, Bill Thomason, Keeneland Association's CEO, testified that ClubSpecialists was not solely responsible for the missed budget and that everyone involved in the budgeting process shared some blame. (Thomason Dep. 123.) ClubSpecialists also points to Keeneland documents which it claims show the missed budget was primarily due to projections regarding Breeders Cup revenue that did not come from ClubSpecialists. With regard to the Micros POS failure, Vince Gabbert, Keeneland Association's COO, testified that the Phase 2 Agreement only required that ClubSpecialists was insuring that the proper vendors were in place for the system and that issues were present previously. (Gabbert Dep. 45–46.) Gabbert

---

[2] Specifically, the Phase 2 Agreement provided that ClubSpecialists was "[o]perations system design & implementation," "[p]ersonnel section, placement including roles and responsibilities and transition," and "[f]inance & technology" which included "[b]udgeting."

also testified that he was unsure who made the recommendation to terminate the executive chef, (Gabbert Dep. 51), and notes that it is unclear why O'Shields decided to leave Keeneland. For these reasons the Court finds that a genuine dispute as to the material facts exists for Keeneland Hospitality's first breach of contract counterclaim.

*3. ClubSpecialists secret payments to O'Shields*

In Count II of its second amended intervening counterclaim, Keeneland Hospitality alleges that ClubSpecialists's secret payments to O'Shields breached the Phase 2 Agreement. Keeneland is entitled to summary judgment on this claim. As discussed above, ClubSpecialists's secret payments to O'Shields constituted willful misconduct, were detrimental to Keeneland's business and reputation, and were acts of personal dishonesty in breach of the Phase 2 Agreement. Accordingly, these acts constituted a breach of the Phase 2 Agreement. Keeneland Hospitality was also damaged by the payments. By concealing the payments, Keeneland was denied the opportunity to address the misconduct or to terminate their relationship with ClubSpecialists and O'Shields. Instead, Keeneland continued to pay substantial sums of money to them after a material breach had occurred. Accordingly, summary judgment is warranted on Keeneland Hospitality's second breach of contract claim.

*C. Keeneland Hospitality's breach of good faith and fair dealing claim*

In Count III of its second amended intervening counterclaim, Keeneland Hospitality alleges that the secret payments to O'Shields violated the Phase 2 Agreements implied duty of good faith and fair dealing. The Court explained the standard for such a claim in its prior memorandum opinion:

> Every contract contains an implied covenant of good faith and fair dealing. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Such a covenant imposes on parties a duty to do everything necessary to carry out the contract. *Id.*; *see also RAM Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003); *Ligon v. Parr*, 471 S.W.2d 1, 3 (Ky. 1971) (noting that the covenant of good faith and fair dealing prevents one party from "impairing the right of another party to receive the fruits of the contract") (internal quotation marks omitted). A party can violate the

14

implied covenant of good faith and fair dealing even without breaching any specific provisions of a contract. *See Hackney v. Lincoln Nat'l Fire Co.*, 657 F. App'x 563, 577 (6th Cir. 2016) (citing *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457–58 (6th Cir. 2005) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2004)); *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 776 (6th Cir. 2009) (citing *Farmers Bank & Trust Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005); *Ligon*, 471 S.W.2d at 2–3).

(DE 32, at 8). ClubSpecialists's secret payments to O'Shields breached the implied duty of good faith and fair dealing because its role in overseeing personnel management created an implied duty to act in accordance with Keeneland Hospitality's personnel policies. Moreover, the secrecy of the payments make them the type of "[s]ubterfuges and evasions," which violate the obligation to perform in good faith. Restatement (Second) of Contracts § 205, cmt. d. ClubSpecialists argues that summary judgment on this count in not warranted because Keeneland cannot establish damages. But, as discussed above, ClubSpecialists's concealment of the payment prevented Keeneland from addressing these issues or terminating the agreement for violations of its personnel policies. Therefore, summary judgment in Keeneland's favor is warranted.

### D. Keeneland Hospitality's tort claims

#### 1. Aiding and abetting a breach of fiduciary duty

Both parties have moved for summary judgment on Count V of Keeneland Hospitality's second amended counterclaim alleging that ClubSpecialists aided and abetted O'Shields's breach of his fiduciary duties owed to Keeneland Hospitality. Under Kentucky law, a breach of fiduciary duty occurs when "(1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach." *Insight Ky. Partners II, L.P. v. Preferred Auto. Servs.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016) (quoting *Fastenal Co. v. Crawford*, 609 F. Supp.2d 650, 665 (E.D. Ky. 2009)). "The scope of the fiduciary duty has been variously defined as one requiring utter good faith or

15

honesty, loyalty or obedience, as well as candor, due care, and fair dealing." *Id.* (quoting *Lach v. Man O'War, LLC*, 256 S.W.3d 563, 569 (Ky. 2008)). A party is liable for aiding and abetting a breach of fiduciary duty if the following elements are proven: "(1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party 'substantial assistance or encouragement' in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty." *Id.* (quoting *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666 (6th Cir. 2010)).

O'Shields admits, and the parties agree, that he owed fiduciary duties to Keeneland Hospitality. (O'Shields Dep. 57); *see also Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12–CV–00429–CRS, 2015 WL 520960, at *6 (W.D. Ky. Feb. 9, 2015) ("[I]t is presumed that an officer or director of a corporation is a fiduciary that owes duties of loyalty and faithfulness . . . ."). By accepting, and more importantly, failing to disclose the payments he received from ClubSpecialists, O'Shields breached his fiduciary duty to Keeneland Hospitality. *Id.* (noting fiduciary duties require a fiduciary to "fully disclose, without ambiguity or reservation, any conflict between his private interest and his employer's") (citing *DSG Corp v. Anderson*, 754 F.2d 678, 682 (6th Cir. 1985) and *Aero Drapery of Ky., Inc. v. Engdahl*, 507 S.W.2d 166, 169 (Ky. 1974)). ClubSpecialists argues that the "hallmark" of a breach of fiduciary duty is that an employee acted to the detriment of his employer. That is a misstatement of the principles of agency law; the hallmark of a breach of fiduciary duty is an agent's failure "to act loyally for the principal's benefit in all matters connected with the agency relationship." Restatement (Third) of Agency § 8.01 (2006). Under that principle, "[a]n agent has a duty not to acquire a material benefit from a third party . . . through the agent's use of the agent's position." *Id.* at § 8.02. In accepting the payments, O'Shields did just that. O'Shields could have remedied the situation by disclosing the payments to Keeneland, *id.* at

16

§ 8.06 (principal's consent), but failed to do so. These principles of agency law recognize that a fiduciary should not be placed into the position of potential conflict between his principal and a third party without disclosing that conflict. Moreover, as discussed above, Keeneland had specific policies against such payments and requiring disclosure of potential conflicts of interest. Accordingly, even assuming that O'Shields did not act unfaithfully as a result of the payment, his mere acceptance of the payments without disclosure constituted a breach of his fiduciary duties. Keeneland Hospitality suffered damages as a result of the breach, as the failure to disclose the payment deprived it of its ability to terminate its relationship with ClubSpecialists.

ClubSpecialists is liable for aiding and abetting O'Shields breach of duty because its payment, which formed the heart of the breach, constituted "substantial assistance or encouragement." *Insight Ky. Partners*, 514 S.W.3d at 546. ClubSpecialists knew that the conduct breached O'Shields fiduciary duty, as they were aware that he was a fiduciary and they also kept the payments secret from Keeneland. Accordingly, Keeneland Hospitality is entitled to summary judgment for Count V of its second amended intervening counterclaim.

2. *Tortious interference and fraudulent omission*

ClubSpecialists seeks summary judgment on Counts IV and VI, alleging tortious interference with a business relationship and fraudulent omission, respectively, of Keeneland Hospitality's second amended intervening counterclaim.

To establish tortious interference with business relations, Keeneland Hospitality must show: "(1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. App. 2014) (citing *Monumental Life Ins. Co. v. Nationwide Ret. Sols. Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky.

2003)). ClubSpecialists alleges that Keeneland has conceded that there was no interference with its business relationship with O'Shields. That is inaccurate. Keeneland Hospitality has alleged that the payments to O'Shields constituted interference. (DE 78, ¶ 82.) ClubSpecialists also argues that O'Shields was considered a valuable employee up until his resignation and therefore the payment did not constitute interference. This is a question for the jury to consider. ClubSpecailists also alleges that Keeneland cannot establish damages. For reasons stated above this argument fails. The secret payments caused Keeneland to continue paying ClubSpecialists after the breach of the contract.

To establish fraudulent omission, Keeneland Hospitality must show: "(a) a duty to disclose a material fact; (b) a failure to disclose a material fact; and (c) that the failure to disclose a material fact induced the plaintiff to act and, as a consequence, (d) to suffer actual damages. *Waldridge v. Homeservices of Ky., Inc.*, 384 S.W.3d 165, 171 (Ky. Ct. App. 2011) (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. 2003)). ClubSpecialists claims that Keeneland's alleged damages are barred by the economic loss rule, which generally, "prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). While *Giddings* did not address the applicability of the rule outside of products liability cases, "federal courts charged with the task of applying Kentucky law have predicted that Kentucky courts would limit the application of the economic loss rule to products liability cases, business purchases cases, and construction cases." *Lewis v. Ceralvo Holdings, LLC,* No. 4:11–CV–00055–JHM, 2012 WL 32607, at *2 (W.D. Ky. Jan. 6, 2012) (quoting *Brewer Mach. & Conveyor Mfg. Co. v. Old Nat'l Bank*, 248 F.R.D. 478, 481–82 (W.D. Ky. 2008)). Accordingly,

the Court finds that the rule is inapplicable to this case and that Keeneland Hospitality may recover damages under a tort theory.

E. *ClubSpecialists's indemnification claim*

Finally, the Court reaches the question of whether, pursuant to the Phase 2 Agreement, Keeneland Association must indemnify ClubSpecialists for the counterclaims asserted by Keeneland Hospitality. The indemnification clause of the Phase 2 Agreement provides that:

> Keeneland Association shall indemnify and hold harmless (including reasonable attorneys' fees and costs) [ClubSpecialists], its officers, directors, and colleagues from any and all claims, demands, damages, actions, or causes of actions or suits of any kind or nature whatsoever, arising out of the normal course of [ClubSpecialists's] duties. Notwithstanding the foregoing, [ClubSpecialists] shall not be entitled to indemnification by Keeneland for acts of dishonesty or for acts which constitute intentional torts or violations of penal statute by [ClubSpecialists].

The indemnification clause does not entitle ClubSpecialists to attorney's fees and costs for Keeneland Hospitality's counterclaims. The indemnification clause applies only for claims "arising out of the normal course" of ClubSpecialists's duties. Breach of an agreement cannot reasonably be said to arise out of the normal course of a parties duties under the agreement. Keeneland Hospitality's counterclaims alleging breach of contract and good faith and fair dealing are therefore not coved by the indemnification provision. The provision also does not apply for "acts of dishonesty or . . . intentional torts." As discussed above, the claims related to the secret payment to O'Shields were acts of dishonesty and Counts IV–VI of Keeneland Hospitality's second amended intervening counterclaim allege intentional torts. Accordingly, Keeneland is entitled to summary judgment on Count III of ClubSpecialists's first amended complaint.

**IV. Conclusion**

For the reasons stated above, the Court **HEREBY ORDERS**:

(1) Plaintiff's motion for summary judgment (DE 83) is **DENIED**;

(2) Defendant and Intervenor Defendant's motion for summary judgment (DE 84) is **GRANTED** with respect to Counts I, II, and III of Plaintiff's first amended complaint and to Counts II, III, and V of Intervenor Defendant's second amended intervening counterclaim.

(3) Defendant and Intervenor Defendant's motion for summary judgment (DE 84) is **DENIED** with respect to Count I of Intervenor Defendant's second amended intervening counterclaim.

Dated May 1, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY